[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 07-15602

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 4 , 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00042 CV-KD-M

EARL J. MCGAHEE,

Petitioner-Appellant,

versus

ALABAMA DEPARTMENT OF CORRECTIONS,
RICHARD ALLEN,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(March 4, 2009)

Before TJOFLAT, MARCUS, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Defendant Earl Jerome McGahee was convicted of capital murder and sentenced to death by the State of Alabama. McGahee appeals the district court's denial of his 28 U.S.C. § 2254 petition for the writ of habeas corpus challenging his conviction. We hold that the Alabama state courts unreasonably applied clearly established federal law as determined by the Supreme Court. We further hold that the State violated McGahee's Fourteenth Amendment equal protection rights under Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), by using its peremptory strikes in a discriminatory manner. Accordingly, we reverse the district court's ruling and direct the court to issue a writ of habeas corpus conditioned on the State's right to retry the petitioner.

## I. PROCEDURAL HISTORY

On September 12, 1986, McGahee was convicted of two counts of capital murder for the deaths of Connie Brown and Cassandra Lee.[1] The jury returned an 11-1 verdict recommending a death sentence, which the trial court subsequently imposed. McGahee v. State, 554 So. 2d 454, 456 (Ala. Crim. App. 1989).

McGahee directly appealed his conviction and sentence to the Alabama

---

[1] The details of the crime are laid out in full at McGahee v. State, 554 So. 2d 454, 456-59. McGahee was convicted of violating Ala. Code § 13A-5-40(a)(8), "[m]urder by the defendant during sexual abuse in the first or second degree or an attempt thereof committed by the defendant," and Ala. Code § 13A-5-40(a)(10), "[m]urder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct."

Court of Criminal Appeals, raising his Batson claim, among others, in that appeal. Although the Court of Criminal Appeals overturned McGahee's death sentence based on the improper introduction of victim impact testimony at the sentencing phase of his trial, the Court of Criminal Appeals denied McGahee's Batson challenge. McGahee v. State, 554 So. 2d at 459-62, aff'd, Ex parte McGahee, 554 So. 2d 472 (Ala. 1989). After a second penalty phase hearing, a new jury returned a 10-2 verdict sentencing McGahee to life imprisonment without the possibility of parole. McGahee v. State, 632 So. 2d 976, 978 (Ala. Crim. App. 1993). The trial judge rejected the jury's verdict and sentenced McGahee to death. Id. McGahee's second death sentence was affirmed on direct appeal. Id., aff'd, Ex parte McGahee, 632 So. 2d 981 (Ala. 1993), cert. denied, McGahee v. Alabama, 513 U.S. 1189, 115 S. Ct. 1251 (1995).

McGahee filed a petition for relief from judgment and sentence pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. The trial court held a hearing on some of McGahee's claims, and denied McGahee's Rule 32 petition. The Alabama Court of Criminal Appeals affirmed. McGahee v. State, 885 So. 2d 191 (Ala. Crim. App. 2003), cert. denied, Ex parte McGahee, 885 So. 2d 230 (Ala. 2004).

McGahee filed a petition for the writ of habeas corpus in the United States

District Court for the Southern District of Alabama in 2005. He alleged numerous grounds for relief, including the Batson claim from his first direct appeal. The district court barred a portion of McGahee's Batson claim as unexhausted.[2] The district court issued an order denying McGahee's remaining Batson claims and other claims on the merits on October 15, 2007. McGahee v. Campbell, No. 05-0042, 2007 WL 3037451 (S.D. Ala. Oct. 15, 2007). McGahee filed a notice of appeal. The district court granted a Certificate of Appealability on one issue: whether the prosecutor used his peremptory strikes in a racially discriminatory manner to remove all of the African-American jurors from McGahee's venire.

## II. STANDARD OF REVIEW

Because McGahee filed his federal habeas petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254 as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 326, 117 S. Ct. 2059, 2063 (1997). AEDPA "establishes a highly deferential standard for reviewing state court judgments." Parker v. Sec'y for Dep't. of Corr., 331 F.3d 764, 768 (11th Cir. 2003). Under AEDPA, a federal court may only grant

---

[2]     The district court held that McGahee's Batson challenge was barred with respect to three jurors. Our opinion today relies on McGahee's challenge to two other jurors, a challenge which is clearly not procedurally barred because the State's last reasoned decision, that of the Alabama Court of Criminal Appeals, 554 So. 2d at 459-62, addressed such challenges on the merits. The Alabama Supreme Court's decision on this issue was summary. Ex parte McGahee, 554 So. 2d at 475-76.

the writ of habeas corpus if the state court's determination of a federal claim was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The evaluation of a prosecutor's race-neutral explanations under Batson is a "pure issue of fact . . . peculiarly within a trial judge's province." McNair v. Campbell, 416 F.3d 1291, 1310 (11th Cir. 2005). Therefore, a Batson claim at habeas is often analyzed under AEDPA § 2254(d)(2), and is only granted "if it was unreasonable to credit the prosecutor's race-neutral explanations." Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct. 969, 974 (2006) (applying AEDPA, 28 U.S.C. § 2254(d)(2), to a Batson claim). See also Miller-El v. Dretke, 545 U.S. 231, 240, 125 S. Ct. 2317, 2325 (2005) (analyzing Miller-El's Batson claim under § 2254(d)(2)).

In this case, the district court reviewed McGahee's claims under § 2254(d)(2). McGahee, however, primarily argues that the Alabama courts failed to follow Batson's three-step analysis. Where the concern is that a state court failed to follow Batson's three steps, the analysis should be under AEDPA § 2254(d)(1), which requires the federal court find that the state court rendered a decision that

5

was "contrary to, or involved an unreasonable application of, clearly established Federal law." AEDPA, 28 U.S.C. § 2254(d)(1).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., writing for the majority). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411, 120 S. Ct. at 1522. With these principles in mind, we review the decisions of the Alabama state courts in this case.

## III. DISCUSSION

The Supreme Court issued its opinion in Batson on April 30, 1986, before the trial of this case in September 1986. Thus, Batson clearly established the relevant federal law. Batson requires a court to undertake a three-step analysis to evaluate equal protection challenges to a prosecutor's use of peremptory challenges. Batson, 476 U.S. at 96-98, 106 S. Ct. at 1723. In Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029 (2003), the Supreme Court paraphrased Batson and

6

summarized its three-step analysis:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. 476 U.S., at 96-97, 106 S. Ct. 1712. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Id., at 97-98, 106 S. Ct. 1712. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination. Id., at 98, 106 S. Ct. 1712.

Miller-El v. Cockrell, 537 U.S. at 328-29, 123 S. Ct. at 1035 (citing Batson, 476 U.S. at 96-98, 106 S. Ct. at 1722-24). The Alabama trial court probably engaged in an unreasonable application of Batson, but we need not rely thereon because it is clear that the Alabama Court of Criminal Appeals unreasonably applied Batson when it failed to follow Batson's three-step analysis. We review each court's decision in turn.

A. Trial Judge's Application of Batson

McGahee made his Batson challenge at the end of jury selection, after the prosecution had removed all of the African-American jurors from the venire panel through challenges for cause and peremptory challenges. Because the trial court denied McGahee's Batson motion based only upon the State's proffer of generalized reasons for its peremptory challenges, and because the trial court failed to make any ruling following the State's proffer of individualized reasons for its peremptory challenges, the trial court unreasonably applied Batson to this case.

7

1. Jury Selection

As noted above, Batson was the "clearly established Federal law" at the time of McGahee's trial. AEDPA, 28 U.S.C. § 2254(d)(1).[3] Jury selection proceeded in this case in the following manner. On September 8, 1986, jury selection began. The court first granted deferrals for hardship, inconvenience, or necessity. The court, prosecution, and defense each questioned the entire jury panel, and then the court allowed the attorneys to voir dire the venire in panels to ask about previous media exposure. Following the individual examination of all the jurors, juror Dr. Willis Wright approached the bench and asked for a deferral because of an out-of-town obligation beginning the next day. The court denied his request.

The judge then entertained challenges for cause. At this point, sixty-six potential jurors remained after deferrals for hardship and other dismissals by the

---

[3] Indeed, the defense brought Batson to the trial court's attention before the start of jury selection. In the summer before McGahee's trial, defense counsel filed a Motion To Enjoin The Prosecutor From Utilizing His Peremptory Challenges To Systematically Exclude Blacks From The Jury Panel. In support of this motion, defense counsel alleged that "the prosecutor in this county routinely utilizes his peremptory challanges [sic] to systematically exclude blacks from the jury panel in all significant cases where the defendant is black and the alleged victim white." The defense counsel withdrew this motion on July 22, 1986. In withdrawing the motion, the defense counsel referenced Batson, stating "the motion that I've done is going to the District Attorney's Office using as peremptory challenges to strike blacks from the jury. I would withdraw that one in light of the recent U.S. Supreme Court decision and I feel at this point that would sort of be redundant." Thus, the possibility of discriminatory peremptory challenges and the applicability of Batson were raised before the trial judge before jury selection began.

court.[4]  Twenty-four members of the venire were African-American.[5]  The State

made its challenges for cause first.  The State moved to dismiss nine jurors for

cause.  All nine were African-American.  Eight were challenged for being

"unalterably opposed to the penalty of death," and one was challenged for being

"too ill to serve."  The defense objected to the grounds for striking all nine, and the

defense noted that all nine were African-American.  The defense counsel stated:

> I would like to introduce one of these [juror lists] into the record, Your
> Honor, which would reflect the racial makeup of these persons that the
> State has numbered and we feel that because they all are members of the
> black race, that that would seriously impair the Defendant's opportunity
> to get a jury of his peers as it concerns – he's a member of the black race,
> and if there be no objection, I would like to introduce this.[6]

The State stipulated that its challenges were all to African-American jurors.  The

court denied the State's challenge to the juror challenged for being "too ill," and

the court accepted the State's eight other challenges for cause.

---

[4]     We calculate this number from the record's reflection that 12 jurors were ultimately chosen to serve, 21 were peremptorily struck by the defense, 22 were peremptorily struck by the prosecution, 3 were struck for cause by the defense, and 8 were struck for cause by the prosecution.  Adding these together, we know that 66 jurors were available when the attorneys began their challenges for cause.

[5]     We calculate this number from the record's reflection that the prosecution struck 8 African-American jurors for cause and 16 African-American jurors through peremptory strikes. The defense struck no African-American jurors.  No African-Americans served on the jury.

[6]     It does not appear, however, that the juror list referred to by defense counsel was entered into evidence.  Although a juror list is present in the record, it does not reflect the race of the jurors, nor which jurors were struck.

All of the defense's challenges for cause were against white jurors, and the judge allowed three of them. After the challenges for cause, the court recessed for the day. Thus, at the end of the first day of jury selection, the State had struck eight African-American jurors for cause, and the defense had struck three white jurors for cause.

Court began the next day out of the presence of the jury. We infer from the judge's opening statement on the record that the peremptory challenge process was completed before the start of the record on September 9, 1986. The record does not indicate when or in what order the State and the defense exercised their peremptory challenges. After beginning the record for the day, the judge stated that one more motion was pending. At that time, the defense made its Batson challenge.

The defense moved to strike the jury and requested a mistrial because "the State, rather, attorney, in exercising his twenty-two strikes, systematically excluded blacks from the jury." The defense stated:

> We particularly present this to the Court in light of a previous objection of the defense that in the Defendant's qualifying challenges, that the State was granted its challenges resulting in a substantial number of blacks being reduced from the jury panel and reducing the number of blacks that the black Defendant had to possibly choose from and hopefully result in them being on this jury.

The trial judge asked for a response by the State.

10

In response, the State proffered only general explanations, other than a specific reason given for striking Dr. Willis Wright. The State first generally asserted that it did not systematically strike African-Americans but rather struck those "jurors that it felt had reasons that would be detrimental to the interests of the State in this particular case." The State gave general reasons for striking groups of jurors, without identifying any jurors by number or name. The State said that it struck Dr. Willis Wright because he had asked to be excused and "we felt he would at this point, not be a very happy juror and felt it was necessary to strike him." At the end of the proffer of general, non-specific reasons, the State reasserted: "[W]e deny that there's any such attempt to systematically exclude any group of people from this jury other than individuals who the State did not feel would be beneficial to their view and purpose to the case." The State then offered to put its individualized reasons for its peremptory strikes on the record, stating:

> We would be happy to, at the proper time, go down each of the strikes of the jurors one by one and put it in the record. We can do it this morning if the Court wants to wait. We finished last night about 7 or 7:30, and I haven't had a chance to compile this roster of notes I have here, so that it would make sense. Now we would ask permission to do that for the record.

The defense attorney agreed to that offer, stating "[y]our Honor, that would be fine for me." The defense also reiterated the Batson claim, stating:

11

> For the record, I would like for the record to reflect that the petit jury, that the petit jury that is going to try this case consists of all white persons and the one alternate offered by the State is a black person. . . .

At this point the State had removed all of the twenty-four African-American potential jurors from the venire. The State used challenges for cause to remove eight African-American jurors and sixteen of twenty-two peremptory challenges to remove all of the remaining African-American jurors. In response to the defendant's Batson motion, the State had given only an affirmation of good faith and general explanations, other than the specific explanation given for the strike of Dr. Willis Wright. Furthermore, before jury selection was finalized, the defense had made its Batson objection. With all of this before it, and without responding to the offer of the State to put its individualized reasons on the record, the court stated simply "[y]our motion is denied." The jury was called and sworn in, and the trial commenced.

The trial court's ruling at this point of the proceedings was an unreasonable application of clearly established federal law because it was based only upon the State's proffer of general explanations and protestations of good faith. The defense moved to strike the jury because the State had removed all of the potential African-American jurors from the jury. The court began to apply Batson by asking for a

12

response from the State.[7]  But when the State asked for time to get its notes in order to proffer specific reasons for the peremptory strikes, the court ignored that offer and ruled with only the State's general assertions before it.  The Supreme Court clearly held in Batson that mere "general assertions" are insufficient, and that the State may not "rebut the defendant's case merely by denying that he had a discriminatory motive or affirming his good faith in making individual selections." Batson, 476 U.S. at 98, 106 S. Ct. at 1723-24.  Furthermore, the Court stated that the State must be "clear and reasonably specific" in explaining the "legitimate reasons" for exercising the peremptory challenges.  Batson, 476 U.S. at 98 n.20, 106 S. Ct. at 1724 n.20.  See also United States v. Horsley, 864 F.2d 1543, 1546 (11th Cir. 1989) ("[T]he prosecutor must nevertheless give a clear and reasonably specific explanation of his legitimate reasons for exercising the challenges."). Therefore, although the trial court may have correctly identified Batson as the controlling legal principle, the court applied Batson unreasonably to the facts of this case by ruling based only upon the State's general explanations and affirmation

---

[7]     Although the trial judge did not explicitly find that the defendant had made out a prima facie case of discrimination, we follow the Alabama Court of Criminal Appeals' rule that "[w]here the trial court requires the prosecution to explain its peremptory challenges without first finding the existence of a prima facie showing of discrimination, we may fairly conclude that the inquiry implied such a finding, and shifted the burden of justification to the prosecutor." McGahee v. State, 554 So. 2d at 459-60 (quoting Williams v. State, 548 So. 2d 501, 504 (Ala. Crim. App. 1988)).

of good faith.

### 2. Post-Trial

After the trial court denied the defendant's <u>Batson</u> challenge, the trial proceeded through the guilt and penalty phases without further mention of the <u>Batson</u> challenge. On September 13, 1986, four days after the trial court's denial of McGahee's <u>Batson</u> challenge, the guilt and penalty phases of the trial concluded, the jury was discharged, and the court recessed. Directly following the court's order of recess, the State gave the individualized, specific reasons for its peremptory strikes.[8] After the State's proffer, the trial court asked only "[i]s that all you wish to put into the record?" The State responded "[t]hat's all." The court asked the defense counsel "[a]nd you, Mr. Boynton?" He responded "[y]es, ma'am, that's all." The court concluded "[a]ll right." The State did not request and the trial court did not make a ruling with respect to the credibility or the adequacy of the State's explanations. Of course, because the case had already been tried to the jury as then composed, and because the jury had already been discharged, deficiencies in the prosecutor's strikes could no longer be cured in any event without starting over. The record then closed.

---

[8]    We note that the State never proffered a reason for its strike of juror Cleophus Polnitz, an African-American juror.

14

The trial judge's failure to make any ruling following the State's proffer of specific reasons for its peremptory strikes was an unreasonable application of clearly established federal law. The Supreme Court held in Batson that after a prosecutor has made his proffer of specific explanations, the trial court must make a determination of whether the defendant has established purposeful discrimination. "The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination." Batson, 476 U.S. at 98, 106 S. Ct. at 1724.[9] The trial court did not react to the proffer of specific explanations. The trial court gave no indication that it determined whether the defendant had "established purposeful discrimination." Id. Thus, the trial judge's decision denying McGahee's Batson motion was an unreasonable application of clearly established federal law. The Batson issue was discussed again briefly, among numerous other issues, at a hearing on McGahee's motion for new trial, and the trial court denied all grounds of the motion with a single comment: "Your Motion for New Trial is denied." However, the trial court never

_____

[9] See also Miller-El v. Dretke, 545 U.S. at 251-52, 125 S. Ct. at 2331 ("As for law, the rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it."); Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770-71 (1995) ("If a race neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful discrimination.").

15

assessed the plausibility of the prosecutor's reasons, and indeed never addressed

any particular juror or the several reasons given for any particular strike. In a

similar situation, the Supreme Court found itself unable to tell which of the several

reasons asserted by the prosecutor were relied on by the trial court; thus the Court

was unable to credit any particular assertion by the prosecutor. See Snyder v.

Louisiana, ____ U.S. ____, 128 S. Ct. 1203, 1209 (2008) ("For these reasons, we

cannot presume that the trial court credited the prosecutor's assertion that Mr.

Brooks [the juror] was nervous."). Thus, the trial court's earlier unreasonable

applications of the law are probably not cured by the trial court's consideration at

the new trial hearing, a decision we need not address for the reasons indicated in

the next paragraph.

Although the trial court's rulings with respect to the Batson challenge are

unreasonable applications of the law as clearly established by Batson (and are

probably not cured at the new trial hearing), we need not rely thereon because the

Alabama Court of Criminal Appeals addressed the merits[10] of McGahee's Batson

challenge in a manner that also constituted an unreasonable application of Batson,

---

[10]    As noted above, although McGahee's Batson challenge may be procedurally
barred with respect to some jurors, it clearly is not with respect to the six jurors addressed on the
merits by the Alabama Court of Criminal Appeals. The State invokes no procedural bar in this
regard. Our decision relies on two of those six.

16

as explained below.[11]

B. Court of Criminal Appeals' Decision

Our holding is based on our conclusion that the decision of the Alabama Court of Criminal Appeals, McGahee v. State, 554 So. 2d at 459-62, was an unreasonable application of clearly established federal law.[12] After a defendant has made out his "prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose,"

---

[11] Because McGahee's unreasonable application challenge to the decision of the Court of Criminal Appeals is clearly not subject to any procedural bar, we also need not decide whether the failures of the trial court are subject to any procedural bars or waivers. Although McGahee has clearly and vigorously argued unreasonable application of clearly established Federal law as determined by the Supreme Court in Batson, his focus has been on the Alabama Court of Criminal Appeals' decision.

[12] We focus here on the decision by the Alabama Court of Criminal Appeals, McGahee v. State, 554 So. 2d 454, because it is the "last reasoned decision" of the state courts on this issue. The Alabama Supreme Court summarily rejected McGahee's Batson claim, along with several other claims. Ex parte McGahee, 554 So. 2d at 476. We have previously held that, in discerning whether a state court opinion rests on federal grounds or state procedural grounds, we "look through" a summary decision to the "last reasoned decision" on the issue. Sweet v. Sec'y, Dep't. of Corr., 467 F.3d 1311, 1317 (11th Cir. 2006). We adopted this approach from the Supreme Court's decision in Ylst v. Nunnemaker, 501 U.S. 797, 802-04, 111 S. Ct. 2590, 1594-95 (1991). Although the context here is different from the procedural bar context of Ylst and Sweet, the principle of "looking through" to the last reasoned state court decision has been applied in the context of AEDPA review by the Sixth Circuit in Joseph v. Coyle, 469 F.3d 441, 450 (6th Cir. 2006); accord Bond v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008); Franklin v. Johnson, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002). Furthermore, no circuit court has held that a federal court should not look through to the last reasoned decision of a state court in the context of AEDPA review. By analogy from Ylst and Sweet, and following the Sixth Circuit in Joseph v. Coyle, we look through the summary decision to the "last reasoned decision" of the Alabama courts. Accordingly, we review the decision of the Alabama Court of Criminal Appeals as the last reasoned decision on the Batson issue.

17

Batson, 476 U.S. at 93-94, 106 S. Ct. at 1721, and after the State has come forward with its neutral explanations, the "trial court then will have the duty to determine if the defendant has established purposeful discrimination," id. at 98, 106 S. Ct. at 1724. The Alabama Court of Criminal Appeals' decision was an unreasonable application of clearly established law because that court failed to follow clearly established law in the third step of Batson when it did not consider "all relevant circumstances" in its analysis of the trial court's ruling. The Batson decision is quite clear that "[i]n deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances." Batson, 476 U.S. at 96, 106 S. Ct. at 1723 (emphasis added). Because courts must weigh the defendant's evidence against the prosecutor's articulation of a "neutral explanation," courts are directed by Batson to consider "all relevant circumstances" in the third step of the Batson analysis.[13] The Alabama Court of Criminal Appeals'

---

[13]     The Supreme Court has repeated this point in later opinions applying Batson. Snyder v. Louisiana, ___ U.S. ___, 128 S. Ct. 1203, 1208 ("[I]n considering a Batson objection, or in reviewing a ruling claimed to be Batson error, all of the circumstances that bear upon the issue of racial animosity must be consulted."); Miller-El v. Dretke, 545 U.S. at 251-52, 125 S. Ct. at 2331-32 ("[T]he rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it."); Hernandez v. New York, 500 U.S. 352, 363, 111 S. Ct. 1859, 1868 (1991) ("An invidious discriminatory purpose may often be inferred from the totality of the relevant facts.") (quoting Washington v. Davis, 426 U.S. 229, 242, 96 S. Ct. 2040, 2048-49 (1976)). Of course, these cases were not "clearly established Federal law" at the time of McGahee's trial and direct appeal, but the opinions confirm our reading of what Batson required. In Batson, the Court pointed out that "[i]n deciding if the defendant has carried his burden of persuasion [of proving purposeful discrimination in the selection of the venire], a court must

18

failure to consider "all relevant circumstances" as required by Batson was an unreasonable application of law. In Williams v. Taylor, the Supreme Court held that the state court's failure to evaluate all available evidence was an unreasonable application of law under AEDPA, 28 U.S.C. § 2254(d), where the applicable legal standard required a weighing of all mitigation evidence.[14] 529 U.S. at 397-98, 120 S. Ct. at 1515 (Stevens, J., writing for the majority). The Court noted that the state court's opinion discussed the mitigation evidence developed at the state post-conviction hearing, "[b]ut the state court failed even to mention the sole argument in mitigation that trial counsel did advance."[15] Id. at 398, 120 S. Ct. at 1515. In the concurring portion of her opinion, Justice O'Connor agreed that:

> The Virginia Supreme Court's decision reveals an obvious failure to consider the totality of the omitted mitigation evidence. . . . For that reason, and the remaining factors discussed in the Court's opinion, I believe that the Virginia Supreme Court's decision "involved an

undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Batson, 476 U.S. at 93, 106 S. Ct. at 1721.

[14] The applicable legal standard was Clemons v. Mississippi, 494 U.S. 738, 110 S. Ct. 1441 (1990), which reaffirmed that courts in a "weighing State" must "give defendants the individualized treatment that would result from actual reweighing of the mix of mitigating factors and aggravating circumstances." Id. at 751-52, 110 S. Ct. at 1450.

[15] Although the Court does not use the full language of "unreasonable application of clearly established Federal law" from § 2254(d)(1), it is clear that Justice Stevens meant that the Virginia court's opinion was an unreasonable application of law under § 2254(d)(1), rather than an unreasonable determination of facts under § 2254(d)(2) because earlier in the opinion he stated that § 2254(d)(2) was not before the Court. Taylor, 529 U.S. at 386, 120 S. Ct. at 1509 (Stevens, J., concurring).

19

unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

Taylor, 529 U.S. at 417, 120 S. Ct. at 1525 (O'Connor, J., concurring) (quoting AEDPA, 28 U.S.C. § 2254(d)(1)).  This Circuit applied the same analysis in Williams v. Allen, 542 F.3d 1326 (11th Cir. 2008), and found that a state court decision was unreasonable because "the court failed to evaluate the totality of the available mitigation evidence."  Id. at 1344 (internal quotation omitted).[16] Therefore, where a legal standard requires a state court to review all of the relevant evidence to a claim, the state court's failure to do so is an unreasonable application of law under AEDPA.[17]

The Alabama Court of Criminal Appeals decision was structured in the following way.  For step one of the Batson inquiry, the court held that the trial

---

[16]     The legal standard at issue in Williams v. Allen was Strickland v. Washington, 466 U.S. 668 (1984).  The Court articulated the standard as requiring a review of "the totality of the evidence." Allen, 542 F.3d at 1342.

[17]     At least one other circuit has already analyzed the failure of a state court to consider all evidence in a Batson analysis.  See Kesser v. Cambra, 465 F.3d 351, 358-59 (9th Cir. 2006) (finding a court of appeal decision denying Batson an unreasonable determination of facts under AEDPA because the court of appeals failed to consider evidence in the record outside of the prosecutor's testimony, and stating that "[t]he court must evaluate the record and consider each explanation within the context of the trial as a whole because an invidious discriminatory purpose may often be inferred from the totality of the relevant facts") (internal quotations omitted).  Other circuits have also found a state court's failure to consider facts in the record to be unreasonable under AEDPA. See Abu-Jamal v. Horn, 520 F.3d 272, 303 (3d Cir. 2008) (under a Mills and Boyde analysis); A.M. v. Butler, 360 F.3d 787, 799 (7th Cir. 2004) (under a Miranda analysis); Bailey v. Rae, 339 F.3d 1107, 1118-19 (9th Cir. 2003) (under a Brady analysis).

court had implicitly found a prima facie case of discrimination when it asked the prosecutor to respond to McGahee's Batson challenge. McGahee, 554 So. 2d at 459-60. Thus, while the court found a prima facie case of discrimination, it did not review any of the evidence from the record to make that determination. For step two of the Batson inquiry, the court limited its review to the six African-American jurors whom the court thought McGahee had challenged as being struck on racial grounds. The court quoted the State's explanation regarding the reasons for striking each of those jurors. For step three of the Batson inquiry, the court then purported to analyze all of the quoted reasons in turn. The court found at least one valid, race-neutral reason for striking each of the jurors, and found that "[a]fter reviewing the State's reasons for the use of its peremptory strikes (including those not specifically challenged by the appellant) 'individually and collectively', [sic] we conclude that the trial judge correctly denied this appellant's motion to quash the jury." McGahee, 554 So. 2d at 462 (internal citation omitted). Because the court omitted from step three of its analysis crucial facts which McGahee raised in his brief to that court, we find that the Court of Criminal Appeals did not review "all relevant circumstances" as required by Batson. 476 U.S. at 96, 106 S. Ct. at 1723.

First, the reasons given by the State for striking juror Lemuel Jones, number

21

106, contain perhaps the clearest indication that the Court of Criminal Appeals failed to consider all relevant circumstances as required by Batson. The State struck Lemuel Jones during the peremptory challenge phase of jury selection. During the proffer of specific explanations for the peremptory strikes after trial, the prosecutor made the following statement regarding Lemuel Jones.

> Juror number 106, Lemuel Jones, is a black male juror. We left him as an alternate at one point in the striking process prior to Dr. Wright's pronouncement. He was sought as perhaps a juror to be left on the entire panel. However, with Dr. Wright leaving, we felt we did not want to leave him individually. We were concerned about the fact that he was a teacher and we simply did not have any further information on Mr. Jones other than he was a teacher and that he seemed to know Dr. Wright. We did attempt and ask for a recess during the period to locate further information about Mr. Jones, attempting to make some emergency type phone calls, but were unsuccessful. We felt we had other choices which we did have clear information on and left him as an alternate.

The Court of Criminal Appeals repeated this statement in full in its opinion, McGahee, 554 So. 2d at 461, and reviewed the statement with the following analysis.

> Lemuel Jones was struck because he was a teacher and because the State did not have a lot of information on him. The State's assertion that it strikes teachers as a general rule because of "their [teachers'] social approach to dealing with people" is totally insufficient to establish why a teacher, specifically Jones, would be biased against the State in this particular case. In fact, under the circumstances of this case (the murders took place in a school classroom), teachers would be just as likely to be biased in favor of the State. The State's other explanation for striking Jones is somewhat weak but we find it to be sufficient because the State

22

> struck a white juror for the same reason. This fact indicates that the State's explanation was legitimate and the decision to strike Jones was not racially motivated.

McGahee, 554 So.2d at 462 (internal citations omitted). As we understand the Alabama court's analysis, it read the record as providing two reasons for the strike of Lemuel Jones: (1) he was a teacher and (2) the State did not have a lot of information on him. The court clearly limited its review to only these two reasons and did not implicitly review any other reasons. "Lemuel Jones was struck because he was a teacher and because the State did not have a lot of information on him." Id. at 462. The court then held that the explanation that Jones was a teacher was "totally insufficient," but that "[t]he State's other explanation is somewhat weak." Id. (emphasis added). Although weak, the court held that reason was sufficient. This analysis is an unreasonable application of law under Batson because the court failed to review the third reason given by the prosecutor. The court's failure to include this third reason in its analysis is surprising because McGahee specifically raised this argument in his brief to the Court of Criminal Appeals. The State's third reason for striking Jones was that "with Dr. Wright leaving, we felt that we did not want to leave him individually." McGahee argued to the Alabama Court of Criminal Appeals and to this Court that the statement that the State "did not want to leave him individually" can be read only to mean that the State did not want to

23

leave Jones as the sole black juror on the panel.[18]  We are forced to agree that the record reflects no similarity between Dr. Wright and Lemuel Jones other than their race and the fact they are teachers, and that the statement "we did not want to leave him individually" indicates that the State did not want to leave a sole black juror whom they did not know on the jury panel.  We have been unable to imagine another non-racial interpretation of this statement.  Although pressed at oral argument for a non-racial interpretation, the State has not provided one.  The failure by the Court of Criminal Appeals to consider the State's articulation of an explicitly racial reason for striking Jones is an unreasonable application of Batson.  Certainly, a statement by the prosecutor that a juror was struck because of his race is a "relevant circumstance" in determining whether Batson has been violated.  Because the Court of Criminal Appeals did not consider the fact that the State proffered an explicitly racial reason for striking Lemuel Jones, we find that the Court of Criminal Appeals did not consider "all relevant circumstances" during the third step of Batson's analysis.  Its review of the trial court's decision was, therefore, an unreasonable application of clearly established federal law.

---

[18]  In McGahee's brief to the Alabama Court of Criminal Appeals, he argued that the State violated Batson in striking juror Jones, because the State "did not want to leave him on the jury as the sole black regular juror."  The State's brief invoked no procedural bar, and the Court of Criminal Appeals addressed the merits of the challenge to juror Jones, but ignored the State's explicit reliance on race and McGahee's argument with respect thereto.

24

Furthermore, the Court of Criminal Appeals' decision also failed to consider two additional crucial facts in its Batson analysis, both of which were raised by McGahee in his brief to that court. First, the court failed to consider the fact that 100% of the African-American potential jurors were removed from the jury by the State. While the Court of Criminal Appeals initially noted that "[t]he State used sixteen of its twenty-two strikes to exclude all of the black venire members from the jury," McGahee, 554 So. 2d at 459, the court never discussed the fact that all of the black venire members had been removed by the prosecution through the challenges for cause and peremptory challenges, and never discussed this pattern or the significance thereof. In discussing the sort of evidence that should be considered by a court during a Batson challenge, the Supreme Court stated that "[f]or example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." Batson, 476 U.S. at 97, 106 S. Ct. at 1723. There can be no clearer "pattern" than the total removal of all African-American jurors from the venire by the State. As Batson explained: "[t]otal or seriously disproportionate exclusion of Negroes from jury venires is itself such an unequal application of the law . . . as to show intentional discrimination." Id. at 93, 106 S. Ct. at 1721 (internal quotations and citation omitted). The failure of the Court of Criminal Appeals to consider this crucial fact

25

was an unreasonable application of Batson.

Second, the court failed to consider the fact that the State had proffered as an explanation that it removed multiple African-American jurors because of their "low intelligence" when the intelligence of the jurors was unsupported by any evidence in the record. Of the six juror strikes that the Alabama court specifically considered in its decision, Edith Ferguson and Irene Lesure were struck, among other reasons, for "low intelligence."[19] Despite the fact that McGahee argued on appeal that there was no support in the record for finding any of the African-American jurors had "low intelligence," the Alabama court failed to consider this explanation entirely in its discussion of the Batson claim and in its analysis of Irene Lesure's and Edith Ferguson's strikes. The State's proffer of the same unsupported reason to explain several of its strikes against African-American jurors is certainly a relevant fact that should have been considered by the Alabama court. Furthermore, the State's claim that several African-Americans were of "low intelligence" is a particularly suspicious explanation given the role that the claim of "low intelligence" has played in the history of racial discrimination from juries.

---

[19] The prosecutor stated about Irene Lesure, "we struck [her] because of the recommendation of our expert based on his investigation of her general intelligence level." McGahee, 554 So. 2d at 460. About Edith Ferguson, the prosecutor stated that "[o]ur expert recommended that she be struck based on his examination of her from the various points I have already made reference to." Id.

The fact that one of the State's proffered reasons for striking multiple African-American jurors is unsupported by the record and historically tied to racism should have been included in the third step of Batson, where all relevant circumstances must be examined to determine whether the State has struck any of the jurors based on their race.

Because the Alabama Court of Criminal Appeals omitted these highly relevant facts from its Batson analysis, the court did not undertake a review of "all relevant circumstances" as required by the third step of Batson. Because the court did not review "all relevant circumstances," we hold that the decision was an unreasonable application of clearly established federal law as determined by the Supreme Court.

C. De novo Review

Where we have determined that a state court decision is an unreasonable application of federal law under 28 U.S.C. § 2254(d), we are unconstrained by § 2254's deference and must undertake a de novo review of the record.[20] We now

---

[20] In Williams v. Taylor, Justice O'Connor, writing for the majority, defined the two prongs of the "contrary to" clause of § 2254(d)(1) and held that "in either of these two scenarios, a federal court will be unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's 'contrary to' clause." 529 U.S. at 406, 120 S. Ct. at 1520 (emphasis added). Confirming this statement that the federal court is unconstrained by § 2254(d)(1), Justice O'Connor joins Parts III and IV of Justice Stevens' opinion for the Court, which Parts are expressly referred to as being "independent review," id. at 389, 120 S. Ct. at 1511, and which Parts clearly constitute an independent or de novo review. Id. at 389-98, 120 S. Ct. at 1511-16.

27

review the record below to determine if there was a <u>Batson</u> violation by the State.

Our review of the record reveals an astonishing set of facts involved in the State's use of peremptory challenges. At the time McGahee was tried, Dallas County, Alabama was fifty-five percent African-American. As discussed earlier, <u>supra</u> footnote 3, McGahee's attorney raised the issue of the prosecutor's history of systematic exclusion of African-Americans from juries prior to trial. In addition, the possibility of discriminatory peremptory challenges and the applicability of <u>Batson</u> were raised before jury selection began.

As described above, at the end of jury voir dire, the attorneys each made their challenges for cause. The State made all nine of its challenges for cause

See also <u>Williams v. Allen</u>, 542 F.3d 1326, 1343-45.

Although <u>Williams v. Taylor</u> indicates that a habeas court's review should be <u>de novo</u>, we acknowledge that the issue that was independently reviewed in <u>Williams v. Taylor</u> was ineffective assistance of counsel, a legal issue and not a factual one. By contrast, the ultimate issue before us is an issue of fact. However, there can be no deference to any finding of fact by the state trial court, because after the prosecutor's post-trial listing of his reasons, the trial court made no finding of fact at all. Moreover, to the extent that a finding was made by the Alabama Court of Criminal Appeals with respect to jurors Jones and Carpenter, that court completely ignored the most relevant fact. Thus, in this case there is no finding of fact to which we could defer, even if we assume that the law would ordinarily require deference to untainted state fact findings in the context of an unreasonable application of law by the state court. <u>See, e.g.</u>, <u>Miller-El</u>, 545 U.S. at 266, 125 S. Ct. at 2340 (in the context of a state court decision which was an unreasonable determination of fact under § 2254(d)(2), the Court's finding of a <u>Batson</u> violation was that the evidence pointed thereto "to a clear and convincing degree."). Because the record in this case is so compelling, we can assume <u>arguendo</u>, but need not decide, that the law would require a federal habeas court in the strange posture of this case to conclude that any finding other than a <u>Batson</u> violation with respect to juror Jones would have been contrary to the clear and convincing evidence. For the reasons set out below, we do conclude that on this record any finding other than that the strike of juror Jones resulted from intentional discrimination in violation of <u>Batson</u> would be contrary to the clear and convincing evidence.

28

against African-American jurors.  Over the defense objections, eight of those challenges were allowed.  Thus, at the end of the challenges for cause, the prosecution had struck eight African-American jurors, and no white jurors.

The next day, the State used sixteen of twenty-two peremptory challenges to remove all of the remaining African-American jurors from the venire.  This is an astounding fact, especially considering the above-mentioned fact that the county in which the trial was taking place was fifty-five percent African-American.  As the Supreme Court said in Batson, total or seriously disproportionate exclusion of African-Americans "is itself such an unequal application of the law . . . as to show intentional discrimination."  476 U.S. at 93, 106 S. Ct. at 1721 (internal quotation omitted).  See also  Miller-El v. Dretke, 545 U.S. at 241, 125 S. Ct. at 2325 ("Happenstance is unlikely to produce this disparity.").

In response to the defendant's Batson motion, the prosecution then proffered only protestations of good faith and general reasons for the strikes.  Among the general reasons proffered was an assertion that "low intelligence" had featured in the selection criteria.  The prosecutor stated:

> The first series of strikes dealt with individuals who predominately, in consultation with our assistant that we had in the course of trying to determine relative intelligence level of individuals, were basically, relatively low in I.Q., and the recommendation to us from our assistant, we could have in selecting and reviewing the jury, were basically low in

29

intelligence levels. That also goes for at least two of the whites we struck and the group of blacks that we originally struck to start with.

A review of the voir dire record reveals the pretextual nature of this explanation. Nowhere in the record is there any evidence supporting a finding of intelligence. The voir dire in this case was brief, and no questions were asked regarding educational level or intelligence. The ability of a subjective rationale such as intelligence to serve as a pretext to cover discriminatory strikes is why the intelligence explanation has been found suspect by other courts. See Turner v. Fouche, 396 U.S. 346, 359-60, 90 S. Ct. 532 (1970) (finding a prima facie case of discrimination where 171 of the 178 citizens excluded from a jury venire for "lack of 'intelligence' or 'moral uprightness'" were African-American); Hillery v. Pulley, 563 F. Supp. 1228, 1248 (E.D. Cal. 1983) ("Intelligence, moral 'uprightness,' 'better types,' and 'proper' jurors provide no standards at all, but inevitably are merely the subjective judgment of the selector."); State v. Washington, 375 So. 2d 1162, 1164 (La. 1979) ("[I]t is not unfair to characterize the prosecutor's basis for an almost automatic peremptory challenge to blacks to an assumption that many of them might not possess the intelligence and education requisite to sit on the case.").

The foregoing constitutes a strong prima facie case of intentional discrimination. Indeed, Batson itself noted the significance of the total exclusion

of African-Americans. 476 U.S. at 93, 106 S. Ct. at 1721. Combining its strikes for cause and peremptory, the prosecution had struck twenty-four African-American jurors, leaving an all-white jury in a county which was fifty-five percent African-American. As the Supreme Court stated in Miller-El, "[h]appenstance is unlikely to produce this disparity." 545 U.S. at 241, 125 S. Ct. at 2325.

Next we review the State's proffer of specific explanations after the trial to see whether its explanations overcome the very strong prima facie case of discrimination. We review "all relevant circumstances." See Miller-El v. Dretke, 545 U.S. at 251-52, 125 S. Ct. at 2331-32 ("[T]he rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it.").

After the trial, the prosecutor proffered specific explanations for all of the peremptory challenges. While McGahee has challenged almost all of those explanations in his appeal to this Court, we need not decide whether every peremptory strike of an African-American juror in this case was racially motivated. As this Court has stated, "under Batson, the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are

31

shown." United States v. David, 803 F.2d 1567, 1571 (11th. Cir. 1986). See also Snyder v. Louisiana, ___ U.S. ___, 128 S. Ct. at 1208 ("Because we find that the trial court committed clear error in overruling petitioner's Batson objection with respect to [one juror], we have no need to consider petitioner's claim regarding [a second juror]"). We focus, therefore, on two strikes in particular, in which McGahee claims the prosecution explicitly relied on racial reasons. Because we find that the State's explanations for striking these two jurors contain such a clear indication that race was, in fact, a basis for their strikes, we harbor no doubt in holding that the State violated McGahee's equal protection rights as defined by Batson.

### 1. Lemuel Jones

We discussed the most troubling aspect of the strike of Lemuel Jones above. See supra. As we described before, we can think of no other explanation for the statement "we did not want to leave him individually" than that the State did not want to leave Lemuel Jones on the jury as the sole black juror. Our conviction that Jones was struck based on his race is strengthened by the fact that the Court of Criminal Appeals found, and we agree, that the other two reasons given by the prosecution for striking Jones were "invalid" and "somewhat weak" respectively. McGahee, 554 So. 2d at 462. Further, as we mentioned above, the State has

32

provided no alternative explanation of the statement, although McGahee

challenged it on direct appeal and to this Court. Indeed, we believe that the State

can offer no other explanation.

### 2. Mollerose Carpenter

Our interpretation of the State's reasons for striking Lemuel Jones is further

supported by the fact that the State gave a similar reason for striking another

African-American juror, Mollerose Carpenter. In full, the State claimed that:

> We struck juror number 17, Mollerose Carpenter, black female, who was a service representative at the Telephone Company. She was an individual who we had very little information on other than the fact that she was working at the Telephone Company. What we observed during the course of examination was reported to us at one point in time that she appeared to be upset or glaring at the parties from the District Attorney's Office and asking questions. She was divorced. There was some concern on our part about maintaining her as a juror, but not having any further information, recommended that level of striking, especially after Dr. Wright was struck, juror number 99. We felt we would be required to strike her.

McGahee, 554 So. 2d at 462. We are most concerned with the last reason the State

gave for striking Carpenter. "There was some concern on our part about

maintaining her as a juror, but not having any further information, recommended

that level of striking, especially after Dr. Wright was struck, juror number 99. We

felt we would be required to strike her." Id. When read in the context of the

33

State's striking Lemuel Jones, it is evident that the State was concerned by the prospect of having Mollerose Carpenter serve as an African-American juror without Dr. Wright on the jury. As with Lemuel Jones, the only significant connection Dr. Wright shared with Carpenter was that both were African-American. As with Lemuel Jones, the State expressed concern that it had "very little information" on Carpenter. And as with Lemuel Jones, the State claimed that it considered having Carpenter serve until Dr. Wright was struck. The only plausible reading of this statement is that once the State had removed Dr. Wright from the jury, it removed the other two African-Americans it had considered keeping, Jones and Carpenter, because they were African-American. The State did not know much about them, and the State did not want African-Americans to serve on the jury without the presence of Dr. Wright, an African-American whom the prosecutor repeatedly said was known to the State.

Also similarly to Jones, the other reasons given by the State for striking Carpenter are unsupported by the record. They are that (1) the State had little information on her; (2) she appeared to be glaring at the prosecution; and (3) she was divorced. The State tied the first reason to Carpenter's race when it stated that it struck her because it did not have a lot of information on her and so felt it had to strike her after Dr. Wright was struck.

The State's explanation that Carpenter was glaring at the State's attorneys is unsupported by the record. While it is possible that Carpenter was glaring, we have no way of determining the accuracy of that claim because the trial court did not respond to it. In Snyder v. Louisiana, the Supreme Court explained that "the trial court must evaluate . . . whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor . . . we have stated that in the absence of exceptional circumstances, we would defer to the trial court." Snyder, ___ U.S. ___, 128 S. Ct. at 1208. Having stated that deference, the Supreme Court declined in that case to credit the prosecutor's claim that the juror in question was struck because he was nervous, because "[h]ere, however, the record does not show that the trial judge actually made a determination concerning [the juror]'s demeanor." Id. at 1209. Accordingly, the Court could not credit the demeanor explanation sufficiently to overcome the fact that the other asserted reason was pretextual. Id. at 1212. Similarly, in this case the State asserted Carpenter's demeanor as a reason for its strike. McGahee, 554 So. 2d at 462. However, similarly to Snyder, the trial court made no response to the State's assertion of this reason, and we have no way of knowing whether the State's assertion that Carpenter was glaring was credible or not. Thus, this is weak support for the State's effort to rebut the significance of its apparently race-based

35

reason for striking Carpenter.

Finally, the Court of Criminal Appeals stated that "the State's assertions that Mollerose Carpenter was struck . . . because she was divorced (as was this appellant and his divorce from one of the victims in this case played a major role in this case) provided legitimate race-neutral reasons." McGahee, 554 So. 2d at 462. The State never offered such a full explanation for its strike of Carpenter. Instead, the State said only, "[s]he was divorced." McGahee, 554 So. 2d at 460. While it is true that the defendant, McGahee, was divorced, it is also true that the victim was a divorced woman, thus creating an equal (or probably greater) likelihood that Carpenter, a divorced woman, would have been prone to identify with the victim, a divorced woman. "If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false." Miller-El v. Dretke, 545 U.S. at 252, 125 S. Ct. at 2332. The State asserted no reason why Carpenter's divorce would have made her more sympathetic to the defendant than to the State's case. The Court of Criminal Appeals' reasoning does not substitute for the State's lack of explanation.

Thus, the State provided one apparently race-based reason for striking Carpenter, and its other reasons for striking Carpenter were weak. We need not decide whether the strike of Carpenter constituted a separate and additional

violation of Batson; the fact that the State was concerned about leaving Carpenter, as well as Jones, as the sole African-American on the jury bolsters our conviction that Jones was removed from the jury as a result of intentional discrimination.

Finally, we mention that the prosecutor made the following statement in his introduction to his post-trial proffer of explanations. "First of all, we used information gathered from the jury list concerning ages, employment, race and general information gathered from that." While the State asserted that the prosecutor meant to refer in this statement only to the sort of facts which appear on the jury list,[21] this fact bolsters somewhat the foregoing strong evidence that the prosecutor did believe that race was a significant factor.

In reviewing "all relevant circumstances" in this record, including the astonishing pattern resulting from the total exclusion of African-Americans in this county in which they comprised fifty-five percent and the strong evidence of race-based decision-making both generally and especially with respect to jurors Jones and Carpenter, we find that it "blinks reality" to deny that the State struck Jones, and perhaps Carpenter, because they were African-American. Miller-El v. Dretke, 545 U.S. at 266, 125 S. Ct. at 2340. The record in this case compels a finding that

---

[21] The defense attorney also stated at trial that such a juror list, which identified the race of potential jurors, existed. It does not appear to be in the record, and the jury list which is in the record does not identify the potential juror's race or age.

the State's use of a peremptory strike in this case to dismiss Jones constituted intentional discrimination, and violated McGahee's rights under the Equal Protection Clause and the clearly established law as determined by the Supreme Court in <u>Batson</u>.[22]

Accordingly, the district court's order denying McGahee's federal habeas petition is REVERSED, and the case is REMANDED to the district court with instructions to issue the writ of habeas corpus conditioned upon the right of the State to retry McGahee.

**REVERSED and REMANDED**

---

[22]     We conclude that any contrary finding would be inconsistent with the clear and convincing evidence.