[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2011
JOHN LEY
CLERK

_____

No. 09-15723

_____

D. C. Docket No. 01-02893-CV-CAP

DANIEL GREENE,

Petitioner-Appellant,

versus

STEVEN UPTON,
Warden, Georgia Diagnostic Prison,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 28, 2011)

Before TJOFLAT, PRYOR and BLACK, Circuit Judges.

PRYOR, Circuit Judge:

Daniel Greene, a Georgia prisoner sentenced to death, raises two main issues

about the denial of his petition for a writ of habeas corpus. First, Greene contends that the prosecution exercised peremptory challenges against six black members of the jury venire on the basis of race in violation of the Fourteenth Amendment, see Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), and that the determination of the Supreme Court of Georgia with respect to this claim was contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts. Second, Greene contends that several arguments by the prosecutor amounted to misconduct that deprived him of a fair trial, and that the decision of the Supreme Court of Georgia on that issue was contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts. After a careful review of the record, we conclude that Greene's contentions lack merit. We conclude further that three remaining claims raised by Greene also fail. We affirm.

## I. BACKGROUND

On September 27, 1991, Daniel Greene committed a spree of murder and mayhem that covered three counties of rural Georgia. Greene first made several visits to the Suwanee Swifty, a convenience store located in Taylor County, Georgia. Greene v. State, 266 Ga. 439, 444–45, 469 S.E.2d 129, 136–37 (1996) [Greene I]. On his last visit, Greene pulled a knife on the store clerk, Virginia

2

Wise, grabbed her, and forced her to give him $142.55 from the cash register. Id. at 444, 469 S.E.2d at 136. Greene took Wise to a back room in the convenience store where he stabbed her through her lung and liver and cut across three of her fingers. Id. A customer, Bernard Walker, then entered the store and caused the automatic doorbell to ring. Id. Greene left Wise in the back of the store, approached Walker near the front counter, and stabbed Walker in the heart. Id. Greene dropped the knife, left the store, and drove away. Id. Wise survived, but Walker died in the parking lot. Id.

Greene drove to the home of an elderly couple, Willie and Donice Montgomery, in rural Macon County, Georgia. Id. at 444, 469 S.E.2d at 137. Greene knew the couple and had previously worked for them as a farm laborer. Id. Greene burst into their home with another knife in hand and demanded their car keys. Id. Willie gave car keys to Greene, and Greene stabbed both Willie and Donice multiple times each in the head. Id. Willie and Donice survived.

Greene then drove to another convenience store, located in Houston County, Georgia. Id. at 444, 469 S.E.2d at 137. Greene pulled a knife on the store attendant and forced her to hand him money from the cash register. Id. Greene also attempted to stab the attendant in the chest, but she bent down, and Greene stabbed her in the back of her shoulder. Id. Greene drove away in the Montgomerys' car.

3

Id. Authorities later arrested Greene at the home of an acquaintance. Id.

Greene confessed to the crimes in a videotaped interview and stated that he had committed the crimes to obtain money for crack cocaine, but Greene later testified that he had no recollection of committing the crimes or of giving a confession. Id. Greene testified that an acquaintance gave him a cigarette earlier that day that may have been laced with a mind-altering drug. Id. at 444–45, 469 S.E.2d at 137. Greene testified that he could remember only that he experienced a severe headache in the convenience store where Wise worked. Id. at 444, 469 S.E.2d at 137.

This appeal concerns the crimes that Greene committed in Taylor County. Greene was convicted in a separate trial for the crimes he committed in Macon and Houston counties. Id. No issues about that trial are before us.

A grand jury indicted Greene for the crimes of malice murder, armed robbery, and aggravated assault. Following a change of venue from Taylor County to Clayton County, Georgia, Greene's jury trial lasted from November 30 through December 9, 1992.

The prosecutors exercised peremptory challenges against ten members of the jury venire, six of whom were black. In response to Greene's objections about the peremptory challenges against the six black members of the jury venire, the

4

prosecutors offered race-neutral reasons for each contested challenge. According to the prosecutors, Reginald Lemmons "was very hesitate [sic] on his answers to the death penalty questions," expressed a view that "cocaine makes you do stuff you wouldn't otherwise do," had sympathy for a cousin with a cocaine problem, and "there was significant body language, contact, smiling, and nodding and so forth, and how you doing between [Greene] and [Lemmons]." Darius Duffie failed to disclose on his juror questionnaire that he had been convicted of a criminal offense. Irene Walton failed to follow the instructions of the trial court to return to court and thought she had to come to court only if she felt up to it, and the prosecutors suggested that Walton's failure to follow instructions might relate to kidney problems that she had discussed. Angela Pope was a single mother, was hesitant about the death penalty, and stated that she had a family member accused of a crime. Stanley Milligan expressed conscientious opposition to the death penalty and stated that he was from a tough neighborhood. Kimberly Sullivan, a single mother of two children, was concerned about child care and expressed opposition to capital punishment, and the prosecutors had already attempted to challenge her for cause based on her opposition to capital punishment.

The trial court considered Greene's objections and the prosecutors' proffered reasons for challenging each of these members of the jury venire and determined

5

that the prosecutors had provided reasons for each challenge that were racially neutral. The trial court also excused five members of the jury venire for cause based on their opposition to the death penalty, see Greene I, 266 Ga. at 440, 469 S.E.2d at 134, and denied a motion by Greene to disqualify a member of the jury venire based on her purported bias in favor of the death penalty, see id. at 442, 469 S.E.2d at 135.

The prosecution made several statements during the closing arguments of the guilt phase of the trial that are pertinent to Greene's argument about prosecutorial misconduct. The prosecutor referred to an emotional outburst by the decedent victim's mother that had occurred earlier in the proceedings. He stated, "[the decedent victim's] poor mother sat here through this whole thing and that's the one time she lost it and I apologize for that. I think she's been here and watched with the dignity of any citizen, any mother[] . . . ." Greene objected and moved for a mistrial, and the trial court denied the motion for a mistrial and gave a curative instruction: "Ladies and Gentlemen of the Jury, put that incident out of your mind. Mr. Pullen [the prosecutor], don't go into that any further." The prosecutor also asked the jurors to place themselves in Wise's position, stating, "Can you imagine the terror in [Wise's] mind? What is she going to do? Look at him. What would you do? Or you, or you, or any of you? Look at him. And he's got a knife."

6

Greene did not object to those statements. The prosecutor also referred to the sentencing phase of the trial to explain an argument of defense counsel:

> Now, I want you to go back. You heard a theory from this lawyer over here that poor old Dan was just trying to leave and somehow or other Bernard ran into the knife. I want you to sit back and I want you to think of where else you've heard that other than right here from the lawyer. Where did it come from? Why are we doing this fussing anyway? He said go ahead, in essence, go ahead and convict him of aggravated assault, go ahead and convict him of armed robbery. Why are we fussing about this part of it? Because this is the case that gets us to the next phase of the trial.

Greene objected, and the trial court sustained the objection, concluding, "I don't believe that's appropriate because at this phase of the trial we are dealing only with the guilt or innocence. So don't go into the next phase of the trial." The prosecutor continued: "Let me just say this. The only crime that's charged that carries the death penalty is murder." Greene again objected, and the trial court sustained the objection and stated, "Punishment, punishment is not a part of this portion of the trial, Mr. Pullen." Later, in its instructions to the jurors, the trial court again explained that the jurors were only to consider whether Greene was guilty or innocent during that portion of the trial: "Now, ladies and gentlemen, you are only concerned with the guilt or innocence of the Defendant. You are not to concern yourselves with punishment. So do not discuss punishment. You are only to consider and concern yourselves with the guilt or innocence of this Defendant."

7

The prosecutor made other comments during the sentencing phase of the trial that are also pertinent to Greene's argument about prosecutorial misconduct. The prosecutor asked Greene's sister, a witness for the defense, "[i]f [Greene] for some way got out and did the same thing . . . you'd still be arguing for his life, wouldn't you?" Greene objected and moved for a mistrial. The trial court denied the motion for a mistrial and instructed the jury to disregard the question. The prosecutor also made Biblical references during the sentencing phase of Greene's trial and commented that Greene might be able to obtain a weapon while in prison, stating, "[t]here's dope in those penitentiaries no matter how hard we try to keep it out and there's knives. They call them shanks. Now, do you want to put him in a penal environment where he can get a hold of those items?" Greene did not object to the Biblical references or the comment about "shanks."

The jury returned a verdict of guilty on all three counts, and the trial court entered a sentence of death for the conviction of malice murder; a consecutive life sentence for the conviction of armed robbery; and a consecutive sentence of 20 years of imprisonment for the conviction of aggravated assault. The jury found that Greene committed the murder while engaged in the commission of an armed robbery, one of the statutory aggravating circumstances.

The Supreme Court of Georgia affirmed Greene's convictions. Greene I, 266

8

Ga. 439, 469 S.E.2d 129. To address Greene's Batson claims, the Supreme Court of Georgia conducted "a thorough review of the voir dire of each of the six prospective jurors" and determined that there was "a valid racially-neutral basis for the employment of a peremptory strike" against each:

> [Lemmons] expressed sympathy for cocaine users who engage in uncharacteristic criminal activity, [Duffie] failed to disclose a criminal conviction, [Walton] failed to report for jury duty the first day and reported a kidney problem which would interfere with her service, [Pope] was a single mother with no family in town to assist with child care, [Milligan] expressed reservations about the death penalty, and [Sullivan] was a single mother with doubtful child care arrangements who expressed hesitation about the death penalty.

Id. at 442, 469 S.E.2d at 135.

The Supreme Court of Georgia determined that Greene was not prejudiced by comments made by the prosecutor during the guilt phase of Greene's trial. The trial court had given a curative instruction about the prosecutor's comments on the emotional outburst by the decedent victim's mother, and the Supreme Court of Georgia determined that there was "no reasonable probability that . . . [those] comments changed the result of trial." Id. at 445, 469 S.E.2d at 137. The Supreme Court of Georgia also determined that, although "[i]t was improper for the prosecutor to ask the jurors rhetorically what they would have done in Wise's situation," that "error was harmless given the overwhelming evidence of Greene's guilt." Id. at 446–47, 469 S.E.2d at 138. The Supreme Court of Georgia

9

determined further that "[t]he prosecutor made two references to the sentencing phase of the trial and, after each reference, the trial court admonished the prosecutor that punishment was not an appropriate topic for the guilt-innocence phase," and such "admonitions were sufficient to address any confusion in the minds of the jurors." Id. at 447, 469 S.E.2d at 139.

The Supreme Court of Georgia likewise rejected Greene's contentions about comments that the prosecutor made during the sentencing phase of Greene's trial. The court determined that, "[o]n one occasion, the prosecutor made a comment which could reasonably be construed as referring to the possibility of Greene's escape rather than to his parole. In response to Greene's motion for a mistrial, the trial court nevertheless gave curative instructions and we find no error." Id. at 448, 469 S.E.2d at 139. The Supreme Court of Georgia determined further that "on no other occasion did the prosecutor mention the word 'parole,'" but even if he had, "Greene's failure to make a motion for a mistrial . . . resulted in a waiver" of that objection. Id. at 448, 469 S.E.2d at 139. The Supreme Court of Georgia also determined that the prosecutor's Biblical references, to which Greene failed to object, were not improper, and the court determined in the alternative that "'there is no reasonable probability that [the prosecutor's Biblical references], even if improper, changed the result of the trial.'" Id. at 450, 469 S.E.2d at 140–41

10

(quoting Crowe v. State, 265 Ga. 582, 593, 458 S.E.2d 799, 811 (1995)).  The

Supreme Court of Georgia likewise rejected Greene's contention that the

prosecutor's comment about "shanks" was prejudicial because, "[c]ontrary to

Greene's contention, the prosecutor limited his argument to reasonable inferences

from the evidence and to matters within common knowledge."  Id. at 450, 469

S.E.2d at 141.

The Supreme Court of Georgia also rejected Greene's contention that the trial

court erred when it excused five members of the jury venire for cause based on their

opposition to the death penalty.  The court cited Wainwright v. Witt, 469 U.S. 412,

105 S. Ct. 844 (1985), as "the controlling authority as to the death-penalty

qualification of prospective jurors," Greene I, 266 Ga. at 440, 469 S.E.2d at 134,

applied the standard of review from Witt, and determined that the trial court did not

err when it dismissed five members of the jury venire after it "undertook an

exhaustive and conscientious effort to determine whether their views on the death

penalty would prevent or substantially impair the performance of their duties in

accordance with their instructions and oaths," id. at 441, 469 S.E.2d at 134.  The

Supreme Court of the United States granted a writ of certiorari and reversed the

decision of the Supreme Court of Georgia because it had incorrectly considered

Witt as the controlling authority for the standard of review to be applied by state

11

appellate courts reviewing the rulings of state trial courts on jury selection. Greene v. Georgia, 519 U.S. 145, 117 S. Ct. 578 (1996). The Supreme Court held that "the Supreme Court of Georgia is free to adopt the rule laid down in Witt . . . , but it need not do so." Id. at 147, 117 S. Ct. at 579. On remand, the Supreme Court of Georgia stated that it had previously adopted Witt as controlling authority in Georgia, and it again affirmed Greene's convictions. Greene v. State, 268 Ga. 47, 485 S.E.2d 741 (1997) [Greene II]. The Supreme Court of the United States later denied Greene's petition for a writ of certiorari. Greene v. Georgia, 522 U.S. 1000, 118 S. Ct. 568 (1997).

On May 29, 1998, Greene filed his first state petition for a writ of habeas corpus in the Superior Court of Butts County, Georgia. Greene amended his state petition three times, and the state court held an evidentiary hearing on Greene's claims for habeas relief. The hearing included consideration of a claim of improper communications between the jurors and a bailiff. The state court determined that Greene had procedurally defaulted several claims, including his contention about improper communications between the jurors and a bailiff and a contention that the state withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). The state court denied Greene's amended petition. The Supreme Court of Georgia denied Greene's application for a certificate of probable

12

cause and denied Greene's motion for reconsideration. Greene filed a second state petition for a writ of habeas corpus, which the state court denied as successive and without merit. The Supreme Court of Georgia denied Greene's application for a certificate of probable cause to appeal the denial of the second petition. The Supreme Court of the United States later denied Greene's petition for a writ of certiorari. Greene v. Head, 537 U.S. 956, 123 S. Ct. 428 (2002). Greene filed a third state petition, which the state court also denied as successive and without merit. The Supreme Court of Georgia denied Greene's application for a certificate of probable cause to appeal the denial of Greene's third state habeas petition.

Greene filed a federal petition for a writ of habeas corpus on October 29, 2001. Greene moved for leave to depose all surviving jurors and alternate jurors who served at his trial to establish, among other claims, cause and prejudice to excuse the procedural default of his claim of improper communications between the jurors and a bailiff. The district court ruled that Greene already "had the opportunity to consult with surviving jurors during his state proceedings," which included testimony from two jurors and the submission of four juror affidavits, and denied Greene's discovery request. Greene later moved for an evidentiary hearing about the issues of procedural default and attached to his motion multiple declarations that had not been considered by the state court. The district court

13

granted the state leave to refile a motion about the issues of procedural default, instructed the state to organize the motion on a claim-by-claim basis, and dismissed as moot Greene's motion for an evidentiary hearing.

The district court ruled that Greene had procedurally defaulted several claims, including the alleged Brady violation and Greene's contention about improper communications between jurors and a bailiff, and allowed Greene to "make a written proffer of evidence to support his claim of cause and prejudice." The district court later determined that Greene had failed to establish sufficient cause and prejudice to overcome the procedural bar of his defaulted claims. The district court then denied the remainder of Greene's federal habeas petition, including three of Greene's claims that are now before this Court: that the state used peremptory challenges to exclude jurors based on their race, that the prosecutor made prejudicial comments, and that the trial court incorrectly excused certain jurors for cause based on their views of the death penalty.

Greene petitioned the district court for a certificate of appealability, which the district court granted in part and denied in part. The district court granted a certificate of appealability on Greene's claims of racial discrimination in jury selection, prosecutorial misconduct, violation of Brady obligations, and excusal of jurors for cause in violation of Witt. Greene filed a motion with this Court to

14

expand the certificate of appealability, and we granted Greene's motion to expand the certificate "on the narrow issue whether there is sufficient cause and prejudice to overcome the procedural default of Greene's claim that communications between a bailiff and jurors violated Greene's right, under the Sixth and Fourteenth Amendments, to a fair penalty phase and reliable sentence." We denied Greene's motion to expand the certificate of appealability as to all other issues.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act governs this appeal and limits our review of the decisions of the state courts. 28 U.S.C. § 2254(d). We may grant habeas relief only if a determination of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," id. § 2254(d)(1), or if the determination of the state court "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "[A] state court acts contrary to clearly established federal law if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court [of the United States] and nevertheless arrives at a result different from [its] precedent.'" Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1333 (11th Cir. 2009) (first and third alterations in original) (quoting Williams v. Taylor, 529

U.S. 362, 406, 120 S. Ct. 1495, 1519–20 (2000)). The decision of a state court involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case," Williams, 529 U.S. at 407, 120 S. Ct. at 1520, or when it "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context," Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411, 120 S. Ct. at 1522. "The question whether a state court errs in determining the facts is a different question from whether it errs in applying the law." Rice v. Collins, 546 U.S. 333, 342, 126 S. Ct. 969, 976 (2006). "Our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review." Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005).

A different standard of review governs determinations that a claim is procedurally defaulted. "[W]hether a particular claim is subject to the doctrine of procedural default[] . . . is a mixed question of fact and law, which we review de

16

novo." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). Greene "must establish cause and actual prejudice to excuse [a procedural] default." Ward v. Hall, 592 F.3d 1144, 1176 (11th Cir.), cert. denied, – U.S. –, 131 S. Ct. 647 (2010). Where a state court finds insufficient evidence to establish cause and prejudice to overcome a procedural bar, "we must presume the state court's factual findings to be correct unless the petitioner rebuts that presumption by clear and convincing evidence." Id. at 1177. "Clear and convincing evidence entails proof that a claim is 'highly probable,' a standard requiring more than a preponderance of the evidence but less than proof beyond a reasonable doubt." Id. (quoting United States v. Owens, 854 F.2d 432, 436 n.8 (11th Cir. 1998)).

## III. DISCUSSION

Greene seeks habeas relief on several grounds, two of which he addressed at oral argument. Greene argued that the state used peremptory challenges to exclude black members of the jury venire in contravention of the Fourteenth Amendment, see Batson, 476 U.S. 79, 106 S. Ct. 1712, and that the determinations of the state courts about this claim were contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or an unreasonable determination of the facts. Greene also argued that the determinations of the state courts with respect to his claim of prosecutorial misconduct were contrary to, or an unreasonable application

17

of, clearly established Supreme Court precedent, or an unreasonable determination of the facts.

We divide our discussion of this appeal in three parts. First, we address Greene's Batson claim. Second, we address Greene's claim of prosecutorial misconduct. Third, we address Greene's other claims for habeas relief.

*A. The Adjudication of Greene's* Batson *Claim by the Supreme Court of Georgia Was Not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law, and Was Not an Unreasonable Determination of the Facts.*

Greene contends that the state used peremptory challenges to remove black members of the jury venire on the basis of their race. We review the decision of the Supreme Court of Georgia "because it is the 'last reasoned decision' of the state courts on this issue." McGahee v. Ala. Dep't of Corr., 560 F.3d 1252, 1261 n.12 (11th Cir. 2009). Greene seeks relief on this Batson claim under both sections 2254(d)(1) and (d)(2). We address each in turn.

Greene contends, under section 2254(d)(1), that the Supreme Court of Georgia applied Batson unreasonably, but that contention fails. Greene relies on our decision in McGahee, 560 F.3d 1252, to argue that the Supreme Court of Georgia applied Batson unreasonably because it did not explicitly discuss each reason offered by the state in support of the peremptory challenges, but McGahee does not stand for that proposition. We determined in McGahee instead that the

18

Alabama Court of Criminal Appeals had failed to consider all relevant circumstances because it failed to discuss "an explicitly racial reason" that the state had proffered in support of a peremptory challenge against a black member of the jury venire and other "particularly suspicious explanation[s]." 560 F.3d at 1264–66. We also stated in McGahee that the court could have "implicitly review[ed] . . . other reasons" offered by the prosecutor, but it did not. Id. at 1264. Unlike McGahee, nothing in Greene's record reveals that the prosecutor provided an explicitly racial reason to exercise a peremptory challenge against a juror, and the decision of the Supreme Court of Georgia states that the court considered all relevant circumstances during its "thorough review," Greene I, 266 Ga. at 442, 469 S.E.2d at 135.

Greene contends further that both the trial court and the Supreme Court of Georgia misapplied Batson because neither made specific fact findings about purposeful discrimination, but the determination "on the ultimate question of discriminatory intent [itself] represents a finding of fact of the sort accorded great deference on appeal," Hernandez v. New York, 500 U.S. 352, 364, 111 S. Ct. 1859, 1868 (1991). Batson does not require elaborate factual findings. See Miller-El v. Cockrell, 537 U.S. 322, 328–29, 123 S. Ct. 1029, 1035 (2003); see also Hightower v. Terry, 459 F.3d 1067, 1072 n. 9 (11th Cir. 2006) ("We may therefore make 'the

19

common sense judgment'—in light of defense counsel's failure to rebut the prosecutor's explanations and the trial court's ultimate ruling—that the trial court implicitly found the prosecutor's race-neutral explanations to be credible, thereby completing step three of the Batson inquiry."). The determination of the Supreme Court of Georgia with respect to Greene's Batson claim was not contrary to, or an unreasonable application of, clearly established federal law.

Greene also contends that the Supreme Court of Georgia made "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), but the record supports the Batson determinations of the Supreme Court of Georgia. See Parker v. Allen, 565 F.3d 1258, 1271–72 (11th Cir. 2009). Greene alleges a Batson violation with respect to six black members of the jury venire. We address each in turn.

The determination by the Supreme Court of Georgia about Reginald Lemmons's sympathy for drug users is reasonable. The transcript of Lemmons's voir dire confirms that Lemmons stated that cocaine makes you "do stuff that you would normally not do," and that he had a cousin with a cocaine problem whom he loved despite his belief that the cousin had broken into his house because of his problem. Several of the white members of the jury venire and alternate jurors, as Greene contends, knew people or had relatives who had taken drugs, and although

20

Juror Holloway stated that the behavior of people on drugs can be "outrageous," none of the white members of the jury venire expressed sympathy for drug users.

The record also supports as reasonable the determination of the Supreme Court of Georgia that the prosecutors exercised a peremptory challenge against Darius Duffie for reasons that were racially neutral. The voir dire transcript confirms what the prosecution alleged and the Supreme Court of Georgia found: Duffie failed to disclose a prior conviction on his juror questionnaire.

The record also supports the determination that the reasons offered for challenging Irene Walton were racially neutral. Walton did not follow the instructions of the trial court because she failed to return to court for jury selection. Greene contends that two white members of the jury venire also failed to appear on the first day of jury selection, but there is nothing in the record to suggest that those jurors disobeyed instructions. In fact, the record supports the opposite conclusion with respect to one of these jurors, Juror Middlebrooks, because it establishes that Middlebrooks had been told that she did not need to appear until the third day. The record also establishes that, during voir dire, Walton stated that she had a kidney problem that might impair her service as a juror. Greene argues that the state failed to challenge two white members of the jury venire who were on medication for health issues, but there is nothing in the record to suggest that the medication or

21

health issues of those jurors would have had any effect on their jury service.

The record supports as reasonable the determination of the Supreme Court of Georgia that the prosecutors exercised a peremptory challenge against Angela Pope for reasons that were racially neutral. The transcript of voir dire establishes that she stated she was "a single parent" who "really wouldn't have anyone to take care of [her] child." Pope stated that she had a roommate that might be able to watch her child, but the roommate was often on call at the hospital where she worked. Greene contends that Juror Martin, who was white, was similarly situated because she had two children and her husband worked out of town. But Martin was not a single mother, and Martin suggested that she would be able to arrange child care. Pope and Martin were not similarly situated.

The record supports as reasonable the determination by the Supreme Court of Georgia about the peremptory challenge of Stanley Milligan. The voir dire transcript confirms that Milligan stated that he was opposed to the death penalty. Milligan stated that he would require more proof in a case where the death penalty was involved based on his opposition to that form of punishment.

The record supports as reasonable the determination of the Supreme Court of Georgia that the prosecutors exercised a peremptory challenge against Kimberly Sullivan for reasons that were racially neutral. The transcript of voir dire confirms

22

that Sullivan responded that she was conscientiously opposed to capital punishment, and that she later stated, "I don't think that another life should be taken because somebody was killed. I mean, that's just my personal belief." Sullivan also expressed some concern about child care arrangements.

*B. The Adjudication of Greene's Claims of Prosecutorial Misconduct by the Supreme Court of Georgia Was Not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law, and Was Not an Unreasonable Determination of the Facts.*

Greene contends that the prosecutor engaged in misconduct when he made several prejudicial statements in closing argument at the end of the guilt and sentencing phases of Greene's trial: "(1) commenting on the possibility Mr. Greene would be released from prison if sentenced to life; (2) drawing attention to the emotional outburst from the [decedent] victim's mother which the jury had previously been instructed to disregard; (3) asking the jury to place themselves in the place of the victims; (4) referring to Biblical passages as a justification for the death sentence; (5) arguing the issue of sentence during the guilt phase of the trial; and (6) arguing facts not in evidence, namely that Mr. Greene would be able to obtain knives (the murder weapon) while in prison."

Greene contends that the determination of the Supreme Court of Georgia with respect to these statements was contrary to, or an unreasonable application of, clearly established federal law because the court did not explicitly cite controlling

23

federal precedent, but that argument fails. This Court, sitting en banc, has recently clarified that a "decision receives AEDPA deference even if the state court fails to cite—or is not even aware of—relevant Supreme Court precedent." Childers v. Floyd, No. 08-15590, slip. op. at 26 (11th Cir. 2011) (en banc) (citing Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002)). "[U]nless the state court clearly states that its decision was based on a state procedural rule, we will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the state court." Id. at 27–28 (quoting Early, 537 U.S. at 8, 123 S. Ct. at 364). We owe deference to the determination of the Supreme Court of Georgia under section 2254(d).

Greene also argues that the determination of the Supreme Court of Georgia as to each alleged instance of prosecutorial misconduct was contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts. Greene's contentions lack merit. We discuss each alleged instance of misconduct in turn.

### 1. Possibility of Parole

The Supreme Court of Georgia made a reasonable determination about Greene's contention that he was prejudiced by comments about the possibility of his parole. Greene objected to one such comment, and the trial court gave a

24

curative instruction, which the Supreme Court of Georgia was entitled to presume the jury followed. The comment did not "'so infect[] the trial with unfairness as to make the resulting [sentence] a denial of due process,'" Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974)), as the Supreme Court of Georgia reasonably concluded, Greene I, 266 Ga. at 448, 469 S.E.2d at 139.

Greene contends that the prosecutor made other statements that suggested Greene might receive parole, but Greene failed to object to those statements before the trial court. The Supreme Court of Georgia ruled that Greene waived his objection. Id. "Under Georgia law, failure to object at trial to prosecutorial misconduct has long constituted a waiver, or procedural default, of such claims later in the litigation." Davis v. Zant, 36 F.3d 1538, 1545 (11th Cir. 1994) (citing Earnest v. State, 262 Ga. 494, 422 S.E.2d 188 (1992); Aycock v. State, 188 Ga. 550, 4 S.E.2d 221 (1939)). During state habeas proceedings, Greene argued that ineffective assistance of counsel established sufficient cause to overcome the procedural bar for these claims, but the state habeas court determined that, even if Greene established cause, "[he] has not shown that the identified instances of alleged prosecutorial misconduct were of sufficient importance that they prejudiced his defense with regard to the verdict of guilty and sentence of death such that the

25

otherwise valid procedural bar should be excused."  That decision was reasonable.

### 2.  Emotional Outburst by the Decedent Victim's Mother

The determination of the Supreme Court of Georgia about the prosecutor's reference to an emotional outburst by the decedent victim's mother was not contrary to, or an unreasonable application of, clearly established federal law.  The Supreme Court of Georgia decided that there was "no reasonable probability that the prosecutor's comments [about the emotional outburst] changed the result of trial."  Greene I, 266 Ga. at 445, 469 S.E.2d at 137; see also Darden, 477 U.S. at 181, 106 S. Ct. at 2471.  That decision was reasonable, particularly in the face of overwhelming evidence of Greene's guilt, which included a videotaped confession.

### 3. Placing Jurors in a Victim's Position

Greene fails to cite any clearly established precedent from the Supreme Court of the United States that the Supreme Court of Georgia contravened or applied unreasonably when it determined that Greene was not prejudiced by the prosecutor's comments that placed jurors in a victim's position.  The Supreme Court of Georgia evaluated whether "[t]he weight of the evidence against petitioner . . . reduced the likelihood that the jury's decision was influenced by [improper] argument," Darden, 477 U.S. at 182, 106 S. Ct. at 2472, and concluded that "the overwhelming evidence of Greene's guilt," including his videotaped confession,

26

rendered the error harmless, Greene I, 266 Ga. at 447, 469 S.E.2d at 138. The record supports this decision as reasonable.

4. Biblical References

Greene also complains about the prosecutor's references to the Bible during closing argument at the sentencing phase. On direct appeal, the Supreme Court of Georgia explained that the prosecutor's references, to which Greene failed to object, were not improper:

> Greene points to nothing in the prosecutor's argument which urged the imposition of the death sentence based upon his religious belief or urged that the teachings of a particular religion mandated the imposition of that sentence against him. Rather, the argument challenged by Greene consists entirely of references to principles of divine law related to the penological justifications for the death penalty, including the concept of retribution and whether, considering the enormity of his crime, Greene should be extended mercy. It is just this type of argument that was found to be authorized in Hill[ v. State, 263 Ga. 37, 427 S.E.2d 770 (1993)] and Crowe[ v. State, 265 Ga. 582, 458 S.E.2d 799 (1995)].

Greene I, 266 Ga. at 450, 469 S.E.2d at 141. In the alternative, the Supreme Court of Georgia held that "'there is no reasonable probability that [the prosecutor's Biblical references], even if improper, changed the result of the trial.'" Id. (quoting Crowe, 265 Ga. at 593, 458 S.E.2d at 811).

The determination of the Supreme Court of Georgia was not contrary to, or an unreasonable application of, clearly established federal law. Greene fails to cite

27

any Supreme Court decisions that involve the propriety of Biblical references during closing argument. Instead, Greene cites Darden, 477 U.S. 168, 106 S. Ct. 2464; Donnelly, 416 U.S. 637, 94 S. Ct. 1868; and Berger v. United States, 295 U.S. 78, 55 S. Ct. 629 (1935), but under those decisions "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181, 106 S. Ct. at 2471 (quoting Donnelly, 416 U.S. at 643, 94 S. Ct. at 1871). The decision of the Supreme Court of Georgia was reasonable in the light of that standard.

### 5. Interjecting Punishment During Guilt Phase

Greene contends that the determination of the Supreme Court of Georgia about the prosecutor's interjection of punishment during the guilt phase of trial was unreasonable, but his argument fails. The trial court clearly instructed the jury to consider only guilt or innocence, not punishment, during the guilt phase of his trial, and the Supreme Court of Georgia determined that "the court's admonitions were sufficient to address any confusion in the minds of the jurors." Greene I, 266 Ga. at 447, 469 S.E.2d at 139. These instructions support as reasonable the decision of the Supreme Court of Georgia.

### 6. Arguing Facts Not in Evidence

Greene contends that the prosecutor argued facts not in evidence when he

28

suggested that Greene may pose a threat to other prisoners because he might obtain a "shank" in prison. But the Supreme Court of Georgia reasonably determined that the prosecutor limited his argument to sensible inferences and matters within common knowledge. Id. at 450, 469 S.E.2d at 141. Additionally, even if the comments were improper, Greene fails to establish that they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181, 106 S. Ct. at 2471 (quoting Donnelly, 416 U.S. at 643, 94 S. Ct. at 1871).

### 7. Consideration of the Cumulative Effect of Prejudicial Statements

Greene contends that the determination of the Supreme Court of Georgia did not comport with clearly established Supreme Court precedent because it "analyzed each allegation of impropriety individually and failed to consider the cumulative effect on the penalty phase of the trial," but Greene's argument fails. Greene raised a claim on direct appeal about the cumulative effect of the prosecutor's allegedly prejudicial statements, and the Supreme Court of Georgia rejected it. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, – U.S. –, 131 S. Ct. 770, 784–85 (2011); see also Childers,

29

No. 08-15590, slip op. at 28–29 ("[U]nless the state court clearly states that its decision was based on a state procedural rule, we will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the state court.") (quoting Early, 537 U.S. at 8, 123 S. Ct. at 364). Although Greene contends that the Supreme Court of Georgia failed even to consider his claim of cumulative prejudicial effect, we must presume otherwise. Greene also fails to explain how the decision of the Supreme Court of Georgia about no cumulative error is contrary to, or an unreasonable application of, clearly established federal law.

### C. Greene's Other Claims Fail.

We have reviewed Greene's three other claims for relief, and we conclude that they too lack merit. First, Greene raises a claim under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), but he procedurally defaulted that claim and failed to establish cause and prejudice to overcome the procedural bar. Second, Greene is also procedurally barred from raising his claim of improper juror communications with a bailiff. Greene sought to introduce new declarations to bolster his contention, but the district court did not expand the record to include these declarations because Greene already had developed a factual record for this claim during state collateral review. "Although state prisoners may sometimes submit

30

new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." Cullen v. Pinholster, 563 U.S. –, 131 S. Ct. 1388, 1401 (2011). The state court held an evidentiary hearing about the alleged improper communication, considered live testimony and affidavits, and reasonably found "that Greene has not alleged any facts to show adequate cause why any claim of trial court errors now raised could not have been raised and litigated on direct appeal." Third, Greene argues that the trial court misapplied federal law or made an unreasonable determination of the facts when it dismissed five members of the jury venire for cause based on their views on capital punishment. We have reviewed the voir dire transcripts for these members of the jury venire and conclude that the determination of the Supreme Court of Georgia was not contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts.

## IV. CONCLUSION

The denial of Greene's petition for a writ of habeas corpus is **AFFIRMED**.

31