[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13359
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-02429-MHS

KENNETH EARL KENDRICK,

Petitioner-Appellant,

versus

SMITH SP WARDEN,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 20, 2012)

Before BARKETT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Kenneth Earl Kendrick, a Georgia state prisoner, appeals the district court's

denial of his petition for habeas corpus, brought under 28 U.S.C. § 2254.  At issue is (1) whether the prosecutor's questions to Kendrick at trial violated *Doyle v. Ohio*, 426 U.S. 610 (1976), by commenting on his right to remain silent, and (2) if there was *Doyle* error, whether the error was harmless because it did not have a "substantial and injurious effect or influence" on the jury's verdict.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  For the reasons that follow, we conclude that there was *Doyle* error but that it was harmless, and thus Kendrick is not entitled to habeas relief.

## I.

Kendrick was indicted in Gwinnett County, Georgia, for murder, two counts of felony murder, and possession of a firearm by a convicted felon during the commission of a felony, in connection with the shooting death of J'Maur Taylor. At trial, Kendrick testified in his own defense and asserted that he shot Taylor, who had stolen his car minutes earlier, in self-defense because Taylor was shooting at him.  On cross-examination, Kendrick admitted that he had not mentioned self-defense to the police when he was interviewed after his car was stolen or at the time police searched his house prior to his arrest.  Specifically, the following colloquy occurred:

State:           Isn't it true that the very first time any member of

2

| | law enforcement of [sic] anyone associated with the State of Georgia has heard your explanation that you were defending yourself is today? |
|---|---|
| Defense Counsel: | Your Honor, now I'm going to object, she's commenting on his right to remain silent. He had no obligation. He testified today. So that's an improper question and I'll object to asking it. |
| Trial Court: | Objection overruled. |
| State: | Isn't it true that the only, the first time that you have made this statement that you were defending yourself, after having been given several opportunities by Detective Wilbanks to tell him what happened, today is the first you've given that explanation? |
| Kendrick: | Given a statement to the State? |
| State: | No. |
| Kendrick: | Or given it to anyone? |
| State: | Anyone associated with the State of Georgia? |
| Kendrick: | That's what I'm saying, giving it to the state? |
| State: | Yes. |
| Kendrick: | Yes, it is my first time. |
| State: | And you didn't give it to Detective Wilbanks on the morning that he came to tell you that he had found your car? |
| Kendrick: | No, ma'am. |
| State: | And you didn't give it to him when he came to execute the search warrant? |
| Kendrick: | No, ma'am. |
| State: | And you haven't ever given that statement to the lead investigator in this case? |
| Kendrick: | No, ma'am. |
| State: | And it's been three years? |
| Kendrick: | Well I learned, you know, to stay silent until you talk with your attorney. |

On redirect examination, Kendrick testified that he only told his lawyer and

3

a friend that he acted in self-defense and that he otherwise remained silent on advice of his lawyer.  When defense counsel started to ask what Kendrick would have done had his attorney not advised him to remain silent, the prosecutor objected, and the trial court sustained the objection.  In closing argument, the prosecutor twice referred to Kendrick's testimony that he acted in self-defense, noting that Kendrick testified to a story that "we finally heard after all this time, that J'Maur was shooting at him," but stating that the evidence did not support his testimony.  The jury convicted Kendrick of all counts, and the state court sentenced Kendrick to life imprisonment on the murder charges and a consecutive fifteen-year sentence on the firearm charge.

Kendrick filed a motion for a new trial, which was denied.  He then appealed to the Georgia Supreme Court, raising as one of the errors that the prosecutor impermissibly questioned him about his silence.  In his brief before the state supreme court, Kendrick asserted that he had received his *Miranda*[1] warnings at the time of his arrest.  The Georgia Supreme Court affirmed Kendrick's convictions, holding that the state could properly impeach Kendrick with his prior inconsistent statements because he had previously spoken with the investigating officer.  Kendrick then filed this § 2254 petition, raising the *Doyle* issue.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

A magistrate judge recommended that the district court review the

*Doyle* claim *de novo* because it was unclear that the state supreme court had

addressed it and deny habeas relief because the *Doyle* error was harmless in light

of the evidence against Kendrick.  The magistrate judge noted that the error

consisted of only a few lines in a 1,300-page transcript in a trial that lasted 5 days

and included 16 witnesses.  The district court adopted the recommendation, denied

habeas relief, and denied Kendrick's application for a certificate of appealability

(COA).  This court then issued a COA as to whether a *Doyle* error occurred, and,

if so whether the error was harmless.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)

ordinarily requires deference to state-court adjudications on the merits. *See* 28

U.S.C. § 2254(d).  In this case, the magistrate judge found that it was unclear

whether the state court had addressed the *Doyle* issue on direct appeal and thus the

magistrate judge and the district court did not give deference to the state court's

decision.

Based on our review of the record, we conclude that the state court did

address the *Doyle* claim.  The state supreme court rejected Kendrick's *Doyle*

argument, citing to state cases applying *Doyle*.  *Kendrick v. State*, 287 Ga. 676,

5

678 (Ga. 2010) (citing *Pye v. State*, 269 Ga. 779 (Ga. 1998) (citing *Doyle*)).

Although the state supreme court did not reference federal law, it cited to cases

that did. This is sufficient to conclude that the state court addressed the

*Doyle* issue. *See Greene v. Upton*, 644 F.3d 1145, 1157 (11th Cir. 2011), *cert.*

*denied*, 132 S. Ct. 1767 (2012).

But that does not end the analysis because the state court's decision failed to

correctly apply the law to Kendrick's *Doyle* claim. Under the AEDPA, a

petitioner is not entitled to habeas relief regarding any claim that was adjudicated

on the merits in state court unless the state court's decision "'was contrary to, or

involved an unreasonable application of, clearly established Federal law . . . .'"

*Harrington v. Richter*, 131 S.Ct. 770, 783-84 (2011) (quoting 28 U.S.C.

§ 2254(d)). "The decision of a state court involves an unreasonable application of

clearly established federal law if the state court identifies the correct governing

legal rule but unreasonably applies it to the facts of the particular state prisoner's

case." *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1286 (11th Cir. 2011).

We conclude that the state court unreasonably applied federal law. In

Kendrick's case, the prosecutor's statements and questions specifically highlighted

Kendrick's failure to inform investigators at any time prior to trial, including after

he had received *Miranda* warnings, that he shot Taylor in self defense. The state

6

correctly concedes that the prosecutor's questions violated *Doyle* by referring to his post-*Miranda* silence.  The state has not disputed Kendrick's assertion that he was given his *Miranda* warnings at his arrest.  Thus, the state court's decision that the prosecutor's questions regarding Kendrick's post-*Miranda* silence were permissible impeachment was an unreasonable application of federal law.[2]  As such, the decision was not entitled to deference under § 2254(d).  *See, e.g. Williams v. Taylor*, 529 U.S. 362, 409 (2000).

### III.

When a state court decision involves an unreasonable application of clearly established federal law, we review the claim *de novo* to determine if the state court's ultimate result was nevertheless correct.  *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007).  We also note that, because the state court's decision in Kendrick's case did not find error, it did not address whether the error was harmless.  But the district court found that it was.  We review *de novo* a district court's denial of a habeas petition.  *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005).  We also review *de novo* whether a constitutional error is harmless under the standard set out in *Brecht*.  *Mansfield v. Sec'y, Fla. Dep't of*

---

[2]  Under the facts of the case, we conclude that fairminded jurists would agree that state court's decision was incorrect.  *Reese*, 675 F.3d at 1286.

7

*Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012).

In *Doyle*, the Supreme Court held that "the use for impeachment purposes of [a defendant's] silence . . . after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Hill v. Turpin*, 135 F.3d 1411, 1413 (11th Cir. 1998) (citing *Doyle*, 426 U.S. at 619). But there is no violation when the state impeaches a defendant based upon his pre-arrest silence or his post-arrest silence that occurs before he receives *Miranda* warnings. *See Fletcher v. Weir*, 455 U.S. 603, 604-07 (1982) (post-arrest, pre-*Miranda* silence); *Jenkins v. Anderson*, 447 U.S. 231, 235-41 (1980) (pre-arrest silence).

*Doyle* errors are subject to harmless error review. *See Hill*, 135 F.3d at 1416-19. An error is considered harmless in the habeas context if it did not have "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Under this standard, an error is not harmless where one is left in grave doubt as to whether the error substantially and injuriously affected or influenced the verdict. *See O'Neal v. McAninch*, 513 U.S. 432, 437-38 (1995).

In *Brecht*, the U.S. Supreme Court addressed a defendant's conviction for first-degree murder where the defendant admitted to shooting the victim but argued that the shooting was accidental. 507 U.S. at 624. During the trial, the state cross-examined the defendant as to whether he had told anyone prior to trial

8

that the shooting was an accident, and later made several references to the defendant's pretrial silence during closing arguments. *See id*. at 625. The Supreme Court concluded that the *Doyle* error at the defendant's trial was harmless because (1) the references to the defendant's post-*Miranda* silence were infrequent, as they comprised less than 2 pages of a 900-page trial transcript; (2) the *Doyle* violations were cumulative, as the state made extensive and permissible references to the defendant's pre-*Miranda* silence; and (3) the state's evidence of guilt was, "if not overwhelming, certainly weighty[,]" and contradicted the defendant's claim of an accidental shooting. *See id*. at 638-39.

Conversely, this court concluded that a *Doyle* error was not harmless where a significant question arose at trial as to whether the defendant had even been armed at the time the victim was shot. *Hill*, 135 F.3d at 1413-19. This court noted that the defendant served as the primary witness that he was unarmed and that defense counsel had undermined the credibility of all of the state's adult witnesses, making the defendant's credibility particularly important to his defense. *See Id*. at 1418. Likewise, the state made references to the defendant's post-*Miranda* silence on four occasions—all of which occurred after the state had been admonished not to do so—and were not confined to a single witness. *Id*. at 1414-16 & n.5, 1418. Although the trial court attempted to provide a curative instruction, this court

9

determined that the instruction served only to highlight the *Doyle* error rather than cure it. *See id*. at 1419.

There is no dispute in this case that the state violated *Doyle*. But, like the district court, we cannot conclude that the error had a substantial effect on the jury's verdict. Although the prosecutor's reference to Kendrick's silence was not a single isolated instance, it was mentioned only twice in Kendrick's own testimony, was not brought up during examination of the other 15 witnesses, and did not take up more than a page or two of a 1,300 page transcript, more than 800 pages of which related to trial testimony and argument. *Cf. Brecht*, 507 U.S. at 638-39. We note that the prosecutor was permitted to impeach Kendrick with his failure to mention self-defense to investigators when he spoke with police twice before his arrest. *Jenkins*, 447 U.S. at 235-41. And the evidence against Kendrick was certainly "weighty." Given the infrequency of the error and the state's evidence establishing Kendrick's guilt and negating his defense, we cannot say that the error substantially and injuriously affected or influenced the verdict. Accordingly, the error was harmless.

**AFFIRMED.**

10