[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13149
_____

D.C. Docket No. 0:11-cr-60285-RSR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRANCE BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 30, 2015)

Before ED CARNES, Chief Judge, MARTIN, Circuit Judge, and THAPAR,[*]
District Judge.

_____

[*] Honorable Amul Roger Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

PER CURIAM:

Terrance Brown was convicted on two counts of attempting to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), one count of committing a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), two counts of possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), and one count of possessing a firearm in furtherance of a crime of violence resulting in death in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(j)(1). This is his appeal from those convictions.[1]  All of his arguments arise from a single question the government asked Brown's wife during the trial.

Before trial, Brown and the government entered into a pretrial agreement barring the government from asking his wife about privileged marital communications.  At trial, the following transpired during the government's direct examination of Brown's wife:

> Q      Do you recall telling Officer Starkey that Mr. Brown called you from a telephone number that you didn't recognize?
>
> A      No.
>
> Q      Do you recall telling Officer Starkey that when — that Mr. Brown said to you during that call, I'm not going back to prison, I can't come home?

---

[1] In an earlier trial involving the same facts, Brown was convicted on one count of conspiring to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a).  He does not challenge his conviction on that count.

2

[DEFENSE]:        Objection.

THE WITNESS:   No, I didn't tell him that.

[DEFENSE]:        Reserve a motion.

THE COURT:      Sidebar, please.

At the sidebar, defense counsel moved for a mistrial on the ground that the government's question fell within the marital communications privilege and thus violated the pretrial agreement. After hearing arguments from both sides, the court excused the jury and took a ten-minute recess. After the recess, the court again heard arguments from both sides outside the presence of the jury.

The court reserved judgment on the motion for a mistrial but decided to issue a curative instruction before the jury heard anything else. Defense counsel recommended language for use in that instruction and, when the jurors returned, the court used defense counsel's proposed language to instruct the jury as follows:

> THE COURT:      Welcome back, everybody. Please be seated. And before we continue with Ms. Brown's testimony, I need to give you all an instruction.
>         I am instructing the jury to disregard the last question that was asked before the break. There has been and there will be no evidence that the statement alluded to in the question asked by the government was ever made. Is there anybody who doesn't understand this question — this instruction or has any question about the instruction, if so, go ahead and raise your hand for me now. Yes.
>
> THE JUROR:      What was the question because I forgot it.
>
> THE COURT:      All right. Just one moment. Come sidebar, please.

3

During that sidebar, defense counsel recommended telling the juror that he had

"already followed the direction," and the government's attorney agreed. The court

then told the jury:

> THE COURT:    Well done, good following of the instruction. I'm
> not going to actually repeat the question at this time because there is
> no evidence of any of the information that was alluded to in the
> question and so I don't want to compound any kinds of
> misunderstandings that anyone might have. So if you don't remember
> the question, then you are doing great following my instruction and I
> thank you for that.
>     Is there anybody who cannot follow the instruction? If so, go
> ahead and raise your hand for me. I see no hands. Thank you all for
> that.

The trial then continued.

The next day, the court denied Brown's motion for a mistrial. The court

stated the following rationale for its decision:

> First of all, I think that the jury's reaction when I instructed them to
> please disregard the prior question and they said, what was the prior
> question, reflects that it wasn't as big of a deal as we may have
> thought at that time. But even if it had been, I think that the
> instruction should have taken care of it. The jury was instructed that
> there's no evidence and that there will be no evidence of the alleged
> statements. And I think that it's not — I don't think that a mistrial is
> appropriate under the circumstances.

The trial concluded later that day and the jury began deliberating. The following

day, the jury returned a verdict convicting Brown on the six counts that resulted in

the judgment he is appealing.

4

Brown contends that the district court abused its discretion in failing to grant his motion for a mistrial and that we should reverse his convictions because of the question that the government asked his wife.  We review a denial of mistrial only for an abuse of discretion.  United States v. Khan, 794 F.3d 1288, 1313 (11th Cir. 2015).  The district court enjoys broad discretion in deciding whether to grant a mistrial because the judge who presides over the trial "is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury."  United States v. Mendez, 117 F.3d 480, 484 (11th Cir. 1997) (quotation marks omitted). We must therefore affirm unless the "decision not to grant a mistrial was a clear error of judgment."  United States v. Dominguez, 226 F.3d 1235, 1247 (11th Cir. 2000).

When evidence or statements are erroneously presented to the jury, we will not reverse if those errors were harmless.  See United States v. Langford, 647 F.3d 1309, 1323 (11th Cir. 2011); United States v. Gonzalez, 921 F.2d 1530, 1549 (11th Cir. 1991).  Errors are harmless when they "ha[ve] no substantial influence on the outcome."  United States v. Emmanuel, 565 F.3d 1324, 1335 (11th Cir. 2009). Where the district court instructed the jury to disregard evidence or statements, we will reverse only if they were "so highly prejudicial as to be incurable by the trial court's admonition."  United States v. Perez, 30 F.3d 1407, 1410 (11th Cir. 1994) (quotation marks omitted).  Those are high bars.

5

In contending that we should reverse his convictions, Brown argues that the government violated its pretrial agreement not to ask questions covered by the marital privilege, that the statement the government's question attributed to him ("I'm not going back to prison, I can't come home.") was a "de facto confession," which may have carried a lot of weight with the jury, and that asking the question was prosecutorial misconduct. All of those characterizations amount to the same thing, which is that the government asked a question that it should not have. The standard for determining whether the district court abused its broad discretion, the heavy deference we owe the judge who was present in the courtroom, and the harmlessness test are all the same regardless of how the claimed error is characterized. Even the admission of a coerced confession is subject to harmless error review, Arizona v. Fulminante, 499 U.S. 279, 296, 111 S. Ct. 1246, 1257 (1991), and by asking the question the government did not come close to introducing a coerced confession.

Assuming that asking the question was error, however characterized, it was harmless. There was strong evidence against Brown. Nathaniel Moss, one of the alleged co-conspirators, testified at length about Brown's participation in the robberies, providing a host of details about the crimes and Brown's role in them. Many of the details that Moss testified to were corroborated by other evidence, including surveillance videos and cell phone records. The government also

6

presented evidence of Brown's participation in prior robberies using the same modus operandi. Brown's wife testified about his unexplained and unusual absence on the evening of, and days after, the final robbery. And she did answer the question in question in a way that favored Brown, not the government.

After the question was asked, the court gave the jury a specific curative instruction, framed in large part by defense counsel, instructing the jury to disregard the question and informing it that "[t]here has been and there will be no evidence that the statement alluded to in the question asked by the government was ever made." The question was not "so highly prejudicial as to be incurable by the trial court's admonition." Perez, 30 F.3d at 1410. And the closing charge to the jury instructed it that anything the lawyers said was not evidence and was not binding on the jury. We presume, of course, that juries follow their instructions. See Penry v. Johnson, 532 U.S. 782, 799, 121 S. Ct. 1910, 1922 (2001); Greene v. Upton, 644 F.3d 1145, 1157 (11th Cir. 2011); Hammond v. Hall, 586 F.3d 1289, 1334 (11th Cir. 2009).

Given the fact that the answer to the question favored Brown, that the court instructed the jury to disregard it, that the evidence against Brown was strong, and that the district court judge was in the best position to evaluate the prejudicial effect of the question, we conclude that asking the question had no "substantial influence on the outcome" of the trial, Emmanuel, 565 F.3d at 1335. It was

7

harmless.  The district court did not abuse its broad discretion by denying Brown's

motion for a mistrial.

**AFFIRMED.**